# CRAWFORD *v.* BURKE.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 22. Argued April 25, 26, 1904.—Decided November 7, 1904.

A plea *puis darrien continuance* waives all prior pleas and amounts to an admission of the plaintiff's cause of action.

A commission merchant and factor who sells for others is not indebted in a fiduciary capacity within the bankruptcy acts by withholding the money received for property sold by him and this rule applies to a broker carrying stocks on margin who sells the same and does not pay over the proceeds to his principal.

A change in phraseology of a statute reënacted creates a presumption of

change of intent of the legislative body from that expressed in the former statute.

While punctuation may shed some light on the construction of statutes, so little is it a part thereof that courts will read the statutes with such stops as will give effect to the whole.

The language of paragraph 4 of section 17 of the bankruptcy act of 1898 is different from that of section 33 of the act of 1867 and the words "fiduciary capacity" extend back to and qualify the words "fraud, embezzlement and misappropriation," and an unliquidated claim of a principal against his broker for fraudulently selling stocks carried on margin is not within the exception of section 17 but is a provable debt and is barred by the discharge in bankruptcy.

A debt, originating or founded upon an open account or upon a contract express or implied, is provable against the bankrupt's estate, though the creditor may have elected to bring his action in trover as for a fraudulent conversion instead of in assumpsit upon an open account.

THIS was an action in trover instituted September 10, 1897, in the Circuit Court of Cook County, Illinois, by Burke against Crawford & Valentine, plaintiffs in error, to recover damages for the willful and fraudulent conversion of certain reversionary interests of the plaintiff in 550 shares of Metropolitan Traction stock.

There were ten counts in the declaration. In each of the first five counts it was alleged that the defendant firm of Crawford & Valentine were stock brokers and dealers in investment securities; that plaintiff employed the defendants as his brokers and agents to buy, hold and carry stocks for him subject to his order; that defendants had in their possession, or under their control, certain shares of the capital stock of the Metropolitan Traction Company, which they were holding as a pledge and security for the amount due them from the plaintiff on said stock; that defendants wrongfully, willfully and fraudulently, and without his knowledge or consent, sold said shares of stock, and willfully and fraudulently, and with intent to cheat and defraud the plaintiff, converted plaintiff's reversionary interest in said stock to their use, whereby it was wholly lost.

In each of the last five counts it was alleged that after defendants had wrongfully and fraudulently, and without plain-

tiff's knowledge or consent, sold the plaintiff's stock and converted the proceeds of such sales to their own use, they falsely and fraudulently represented to him that they still had the stock on hand and were carrying it for him; that their correspondents in Philadelphia, where the stock had been bought, were calling upon them for further demands or margins, and that it therefore became necessary to call upon the plaintiff to make further payments on the stock in order to comply with their correspondents' demands and to be secured against loss. It was averred in each of said counts that such representations were false and fraudulent, and by means thereof defendants obtained from the plaintiff the aggregate sum of $10,800.

To this declaration defendants pleaded not guilty, upon which issue was joined January 4, 1900, and on May 12, 1900, a jury trial was waived in writing. The case rested without action until January 3, 1901, when defendants filed their separate pleas of *puis darrein continuance*, setting up that on April 5, 1900, the defendants had received their discharge in bankruptcy, in the District Court for the Northern District of Illinois, and that plaintiff's claims were provable and not excepted from the operation of such discharge. The plaintiff replied denying that his claim was provable, and averred that the same was excepted from such operation.

Notwithstanding the plea of *puis darrein continuance*, the plaintiff introduced evidence and proved the allegations in his declaration and the amount of damages he had sustained. Defendants were found guilty upon all the counts and judgment entered against them.

The case was taken to the appellate court, where it appearing that one of the justices had taken part in the trial of the case below, and that the two remaining justices were unable to agree upon the case, the judgment of the Circuit Court was affirmed. The judgment of the appellate court was also affirmed by the Supreme Court of Illinois, 201 Illinois, 581, to review which judgment this writ of error was sued out.

*Mr. Charles E. Vroman* and *Mr. George Packard*, with whom *Mr. Harrison Musgrave* was on the brief, for plaintiff in error:

The claim of defendant in error is a provable debt in bankruptcy under the bankruptcy act of 1898. Bankruptcy Act, 1898, sec. 17; sec. 1 (11); sec. 63; *In re Hirschman*, 104 Fed. Rep. 69; *T. W. & W. Ry. Co.* v. *Clews*, 67 Illinois, 383; *Elliott* v. *Jackson*, 3 Wisconsin, 649; *Sloat* v. *Evans*, 35 Illinois, 455; *Western Assurance Co.* v. *Towle*, 28 N. W. Rep. 106 (Wis.); *Dashaney* v. *Rogers*, 21 Pac. Rep. 342 (Cal.); *In re Filer*, 125 Fed Rep. 261; *In re Silverman*, 101 Fed. Rep. 219; Collier on Bankruptcy, 338, 344; *Beers* v. *Hamlin*, 99 Fed. Rep. 695; *In re Hilton*, 104 Fed. Rep. 981; *In re Graff*, 117 Fed. Rep. 343.

Being a provable debt, the claim is of such a character that it is barred by the discharge in bankruptcy of plaintiffs in error, it not being within any of the exceptions of section 17 of the bankruptcy act. (1.) As stock-brokers, or factors, plaintiffs in error were not "acting in a fiduciary capacity." *Chapman* v. *Forsyth*, 2 How. 202; *Neal* v. *Scroggs*, 95 U. S. 704; *Keine* v. *Graff*, 14 Fed. Cases, No. 7650; *Hennequin* v. *Clews*, 111 U. S. 565; *Grover & Baker Co.* v. *Clinton*, 11 Fed. Cases, No. 5845; *Noble* v. *Hammond*, 129 U. S. 68; *Upshur* v. *Briscoe*, 138 U. S. 375; *Anstill* v. *Crawford*, 7 Alabama, 340; *Woolsey* v. *Cach*, 54 Alabama, 383; *Sanders* v. *Sanders*, 56 Arkansas, 588; *Chipley* v. *Frierson*, 17 Florida, 642; *Georgia R. Co.* v. *Cubbedge*, 75 Georgia, 323; *Dupont* v. *Beck*, 81 Indiana, 274; *Phillips* v. *Russell*, 42 Maine, 361; *Hyman* v. *Powl*, 7 Met. 330; *Halpin* v. *May*, 100 Massachusetts, 499; *Cronan* v. *Cotting*, 104 Massachusetts, 245; *Woodward* v. *Towne*, 127 Massachusetts, 42; *Green* v. *Chilton*, 57 Mississippi, 599; *Gibson* v. *Gorman*, 44 N. J. L. 327; *Palmer* v. *Hussy*, 87 N. Y. 308; *Lawrence* v. *Harrington*, 122 N. Y. 408; *Mulock* v. *Byrns*, 129 N. Y. 25; *Bissell* v. *Couchine*, 15 Ohio, 64; *Curtis* v. *Waring*, 92 Pa. St. 109; *Scott* v. *Porter*, 93 Pa. St. 40; *Pankey* v. *Nolan*, 6 Humph. 155; *Hammond* v. *Noble*, 57 Vermont, 200; *Slayton* v. *Wells*, 66 Vermont, 63; *Wilson* v. *Kirby*, 88 Illinois, 570; *Straw* v. *Jurgens*, 144 Illinois, 507; *Shepherd* v. *Furness*, 153 Illinois,

590; *Pierce* v. *Shippee*, 90 Illinois, 376; Am. & Eng. Ency. of Law, vol. 16, p. 781 (2d ed.); *In re Basch*, 97 Fed. Rep. 761; *Bracken* v. *Milner*, 104 Fed. Rep. 522.

The clause "fraud," etc., used in subdivision four of section 17, is limited and restricted by the qualifying clause "while acting in a fiduciary capacity." There being no fiduciary relation between the parties, the debt is not within the exception, and hence is barred. *In re Rhutassel*, 96 Fed. Rep. 599; *In re Hirschman*, 104 Fed. Rep. 69; *In re Lewinsohn*, 99 Fed. Rep. 74; *Hargadine-McKitrick Co.* v. *Hudson*, 111 Fed. Rep. 361; *Gee* v. *Gee*, 87 N. W. Rep. 1116; *In re Bullis*, 73 N. Y. Supp. 1048; *Allen* v. *Ferguson*, 85 U. S. 1.

"Fraud," as used in the act, means positive fraud, involving moral turpitude—not constructive fraud, or fraud in law. Conversion by one in lawful possession of property is not "fraud" within the meaning of the bankruptcy act. Hence the claim of defendant in error does not fall within the meaning of the term "fraud" as there used. And on this point the entire evidence is properly before the court on the plea *puis* and the replication thereto. Chitty on Pleadings, 246; *Clough* v. *Shepherd*, 31 N. H. 490; *Teel* v. *Fonda*, 4 Johns. 304; *Neal* v. *Scroggs*, 95 U. S. 704; *Hennequin* v. *Clews*, 111 U. S. 565; *Noble* v. *Hammond*, 129 U. S. 68; *Upshur* v. *Briscoe*, 138 U. S. 138; *Keime* v. *Graff*, 14 Fed. Cas. No. 7650; *Bracken* v. *Milner*, 104 Fed. Rep. 522; *Burnham* v. *Pidcock*, 68 N. Y. Supp. 1009; *In re Benedict*, 75 N. Y. Supp. 165; *In re Gaylord*, 113 Fed. Rep. 131, 135; *Scott* v. *Porter*, 39 Am. Rep. 726; *Watertown Carriage Co.* v. *Hall*, 72 N. Y. Supp. 466; *Crosby* v. *Miller*, 25 R. I. 172 (55 Atl. Rep. 328); *Western, etc., Co.* v. *Hunt*, 116 Fed. Rep. 442.

The case made by defendant in error shows that there was no fraudulent intent or positive fraud on the part of plaintiffs in error, and that the relations between the parties were purely contractual and therefore not responsive to the counts either for conversion or deceit. *Markham* v. *Jourdain*, 41 N. Y. 239; *Wood* v. *Hayes*, 15 Gray, 375; *In re Swift*, 105 Fed. Rep. 493;

*Coville* v. *Loud*, 135 Massachusetts, 41; *Weston* v. *Jordan*, 168 Massachusetts, 501; *Corbett* v. *Underwood*, 83 Illinois, 324.

The evidence shows that the transactions out of which the claim of defendant in error arises were of a gambling character and illegal and void at common law and under the statute. The court may, at any stage, when it appears that the matter involved is forbidden by public policy, or is against public morality, decline to consider a claim so founded, regardless of the pleadings. *Lyon* v. *Culbertson*, 83 Illinois, 38; *Soby* v. *People*, 31 Ill. App. 242; *Cothran* v. *Ellis*, 125 Illinois, 506; *Schneider* v. *Turner*, 130 Illinois, 39; *Jameson* v. *Wallace*, 167 Illinois, 396; *Oscanyon* v. *Arms Co.*, 103 U. S. 261; *Martin Emerich Outfitting Co.* v. *Siegel, Cooper & Co.*, 108 Ill. App. 364.

*Mr. John E. Burke* in person for defendant in error:

The claims of defendant in error were claims for unliquidated damages arising out of torts; they were claims for damages occasioned by positive fraud; they were not provable in bankruptcy, and therefore were not barred by the discharge of plaintiffs in error.

As to the proof of debts under the provisions of the act of 1898, paragraph *a* of § 63 classifies all claims or "debts which may be proved," while paragraph *b* provides for the precedent liquidation of such unliquidated claims only as come within the provisions of paragraph *a*, and, thereafter, for the proof and allowance of such claims.

Claims for unliquidated damages arising out of tort do not come within any of the provisions of paragraph *a*, and hence are not provable. Collier on Bankruptcy, 1900, 385; Lowell on Bankruptcy, 487; *In re Yates*, 114 Fed. Rep. 365; *In re Big Meadows Co.*, 7 Am. Bank. Rep. 697; *Old Colony Boot & Shoe Co.* v. *Parker*, 183 Massachusetts, 557, 561; *Watertown Carriage Co.* v. *Hall*, 77 N. Y. Supp. 1028.

The claims of the defendant in error were for unliquidated damages arising out of tort, and did not come within any of

the provisions of paragraph *a*.  Under *Dunbar* v. *Dunbar*, 190 U. S. 340, such claims cannot be liquidated or proved under the provisions of paragraph *b*.

As to waiving the tort and effect in bankruptcy, see *Bixby* v. *United States*, 188 U. S. 405; *Williamson* v. *Dickens*, 27 N. Car. 259; *Hughes* v. *Oliver*, 8 Pa. St. 426; *Graham* v. *C. M. & St. P. Ry. Co.*, 10 N. W. Rep. 609; *Bradner* v. *Strang*, 89 N. Y. 299, 306.

A claim which could not be liquidated and proved under the act of 1867 certainly cannot be liquidated and proved under the act of 1898.  Defendant in error did not file any claim with the receiver or receive any dividend.

While the record does not show that the state Supreme Court passed upon the question as to whether the claims of plaintiff in error were provable, yet, the question appears of record, and was raised and argued in each of the courts below, and calls into exercise the jurisdiction of this court. The question is involved in the main question: Was the discharge in bankruptcy of plaintiffs in error a bar to the claims in controversy?  If the claims were not provable, the discharge was not a bar, and the judgment should be affirmed. *Collier* v. *Stanbrough*, 6 How. 21; *Dewey* v. *Des Moines*, 173 U. S. 197, 198; *Murdock* v. *Memphis*, 20 Wall. 590, 636.

The qualifying clause in subdivision 4 of § 17 of the act of 1898, "while acting as an officer or in any fiduciary capacity," refers, both grammatically and logically, to its next antecedent only, which is the term "defalcation," and does not apply to or restrict the terms "fraud" or "embezzlement."

As to grammatical construction and effect of punctuation, see *City Safe Dep. Co.* v. *Lee*, 107 Ill. App. 263; *S. C.*, 204 Ill. Sup. Ct. 69; Endlich on Interpretation, § 2; 26 Am. & Eng. Ency. of Law (2d ed.), 613; *Cushing* v. *Worrick*, 9 Gray, 382, 385; *State* v. *Jernigan*, 3 Murphey, 12, 18; *Dearborn* v. *Inhabitants of Brookline*, 97 Massachusetts, 466, 469; *Wetmore* v. *Wetmore*, 17 Pa. County Rep. 11; *Quinn* v. *Lowell Electric Light Co.*, 140 Massachusetts, 106; *Price* v. *Price*, 10 Ohio St.

316; *Hamilton* v. *Steamboat, etc.*, 16 Ohio St. 428; *Zimmerman* v. *Willard*, 114 Illinois, 364; 45 Cent. Law J. 229, 236; *Albright* v. *Payne*, 1 N. E. Rep. 20; *Joy* v. *St. Louis*, 138 U. S. 1, 32.

It cannot be held that the clause applies to some classes of debts created by positive fraud, but not to all. It has no. other or different meaning or application in the act of 1898 than it had in the acts of 1841 and 1867. Under the act of 1867 it was never held that "while acting in any fiduciary character" applied to or restricted the term "fraud."

Neither does it restrict the term "embezzlement," which is a specific term and imports the violation of a trust. *Moore* v. *United States*, 160 U. S. 268; *Grin* v. *Shine*, 187 U. S. 181, 196; *Central Nat. Bank* v. *Conn. Mut. Life Ins. Co.*, 104 U. S. 54. As to definition of "defalcation," see 9 Am. & Eng. Ency. of Law, 2d ed., 166; see Black's Law Dictionary; *Madison Twp.* v. *Dunkle*, 114 Indiana, 262; *Chapman* v. *Forsyth*, 2 How. 202, 208; *Frey* v. *Torrey*, 75 N. Y. Supp., 40. Nothing in the statute can be regarded as superfluous but full effect must be given to every part of it. Endlich on Interpretation, §§ 23, 265; *Montclair* v. *Ramsdell*, 107 U. S. 152; Bishop on Stat. Crime, 3d ed., § 82; *Opinion of Justices*, 22 Pick. 571, 575; *Commonwealth* v. *McCaughey*, 9 Gray, 296; *Wilmot* v. *Mudge*, 106 U. S. 217.

Section 33 of the act of 1867, was substantially a reënactment of the act of 1841, in that regard, with the additional provision that no debt created by fraud or embezzlement shall be discharged. See *Noble* v. *Hammond*, 129 U. S. 65, 69.

As to the construction to be given to § 33 of the act of 1867, with reference to the release of a bankrupt from debts or claims created by his positive fraud, see *Strang* v. *Bradner*, 114 U. S. 555; *Ames* v. *Moir*, 138 U. S. 306; *Forsyth* v. *Vehmeyer*, 177 U. S. 177, holding that a discharge in bankruptcy did not release a bankrupt from debts or claims which were created by his positive fraud involving moral turpitude or intentional wrong, while not acting as an officer or in any fiduciary capacity at the time he committed the fraud.

Subd. 4 of § 17 of the act of 1898, is substantially a re-enactment of a corresponding provision in the act of 1867, with the addition of the word "misappropriation." Loveland on Bankruptcy, § 293, 295; Lowell on Bankruptcy, 395; *In re Basch,* 97 Fed. Rep. 761; Collier on Bankruptcy, 3d ed. 198; *Frey* v. *Torrey,* 73 N. Y. Supp. 201; *S. C.,* 75 N. Y. Supp. 40.

When an act, or part of an act, which has received a judicial construction, is reënacted in substantially the same terms, that construction must be considered to have the sanction of the legislature, unless the contrary appears. Mere change in the phraseology works no change in the established interpretation thereof, unless it clearly appears that such was the intention of the legislature. Black on Interpretation, 161; *Bradley* v. *State,* 69 Alabama, 318; *Huddleston* v. *Askey,* 56 Alabama, 218; *Posey* v. *Pressly,* 60 Alabama, 243, 249; *McDonald* v. *Hovey,* 110 U. S. 619, 628; Potter's Dwarris, 181, note 2; *Yates's Case,* 4 Johns. 318, 358; *Dominick* v. *Michael,* 4 Sandf. (13 N. Y.) 374, 409; *The Devonshire,* 13 Fed. Rep. 39; *Reiche* v. *Smythe,* 13 Wall. 162; *Willis* v. *Eastern Trust & Banking Co.,* 169 U. S. 295, 307; *Commonwealth* v. *Hartnett,* 3 Gray, 450; *State* v. *Cornell,* 75 Fed. Rep. 25.

A discharge in bankruptcy, under the act of 1898, does not release a bankrupt from debts created by his positive fraud involving moral turpitude or intentional wrong. *In re Wollock,* 120 Fed. Rep. 912; *In re Blumberg,* 1 Am. Bk. Rep. 633; *In re Black,* 97 Fed. Rep. 493; *In re Thomas,* 92 Fed. Rep. 912; *In re Basch,* 97 Fed. Rep. 761; *In re Lewensohn,* 99 Fed. Rep. 73; *In re Steed,* 107 Fed. Rep. 682; Loveland on Bankruptcy, §§ 293, 295; Lowell on Bankruptcy, § 433, p. 488; Collier on Bankruptcy, 3d ed. 200; *Bracken* v. *Milner,* 104 Fed. Rep. 522; *In re Cole,* 106 Fed. Rep. 837; *Frey* v. *Torrey, supra; Stevens* v. *Meyers,* 76 N. Y. Supp. 332; *Predmore* v. *Torrey,* 77 N. Y. Supp. 86.

The cases cited by plaintiffs in error can be distinguished.

The history of bankruptcy legislation shows that no such law was ever enacted, either in this country or in England.

It has been repeatedly declared by the highest courts of both countries that bankrupt laws are enacted with the object and intention of relieving *honest* men, but not *rascals,* from the burden of their debts. *In re Silverman,* 22 Fed. Cas. 139; Cong. Rec. June 28, 1898; *Re Dow's Estate,* 105 Fed. Rep. 889; *In re Becker,* 106 Fed. Rep. 54; *Turner v. Turner,* 108 Fed. Rep. 785; *Lubke* v. *Thomas,* 116 U. S. 606; *In re Scott,* 126 Fed. Rep. 981; *McDonald* v. *Brown,* 10 Am. Bank. Rep. 58; *Dister* v. *McCauley,* 71 N. Y. Supp. 949; *Tinker* v. *Colwell,* 193 U. S. 473.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

A year after this case was put at issue, and upon the opening of the trial, defendants filed their separate pleas *puis darrein continuance,* setting up their discharge in bankruptcy, and averring that plaintiff's claim was a provable debt, and the discharge a complete defense.

It is a well-settled principle of law, and was so held by the Supreme Court of Illinois in this case, that a plea *puis darrein continuance* waives all prior pleas, and amounts to an admission of the cause of the action set up in the plaintiff's declaration. *Mount* v. *Scholes,* 120 Illinois, 394; *East St. Louis* v. *Renshaw,* 153 Illinois, 491; *Angus* v. *Trust & Savings Bank,* 170 Illinois, 298; *Kimball* v. *Huntington,* 10 Wendell, 675.

But notwithstanding this, plaintiff was permitted to introduce evidence in proof of the fraud alleged in his declaration; and upon the conclusion of the trial the court found there had been a conversion of plaintiff's reversionary interest in the stock, for which he "had a right to recover in trover," and that it was not such a debt as was barred by the bankruptcy act. Upon appeal to the Supreme Court it was held that it was not necessary to the judgment to decide whether the allegations of the declaration were admitted by the pleadings, as they were established by the proof which had been adduced

by plaintiff, "and the propositions held as law on that branch of the case being correct, judgment for plaintiff necessarily follows." That court also held that the case, being one of fraud, was not covered by the defendants' discharge in bankruptcy.

The only Federal question involved in the case is whether the Supreme Court of Illinois gave the proper effect to the discharge pleaded by the defendants. If plaintiff's claim was not a provable debt, or was expressly excepted from the operation of the discharge, the decision of that court was right, but if it was covered by the discharge such discharge was a complete defense.

Section 17 of the bankruptcy act of 1898 contains, among other things, the following provisions:

"SEC. 17. A discharge in bankruptcy shall release the bankrupt from all of his provable debts except such as . . . (2) are judgments in actions for frauds, or obtaining property by false pretences, or false representations, or for wilful and malicious injuries to the property or person of another . . . or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer, or in any fiduciary capacity."

Under this section, whether the discharge of the defendants in bankruptcy shall operate as a discharge of plaintiff's debt, it not having been reduced to judgment, depends upon the fact whether that debt was "provable" under the bankruptcy act, that is, susceptible of being proved; second, whether it was or was not created by defendants' fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity.

1. Provable debts are defined by section 63, a copy of which appears in the margin.[1] Paragraph *a* of this section includes

---

[1] SEC. 63. DEBTS WHICH MAY BE PROVED.—(*a*) Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that

debts arising upon contracts, express or implied, and open accounts, as well as for judgments and costs. As to paragraph *b*, two constructions are possible: It may relate to all unliquidated demands or only to such as may arise upon such contracts, express or implied, as are covered by paragraph *a*.

Certainly paragraph *b* does not embrace debts of an unliquidated character and which in their nature are not susceptible of being liquidated. *Dunbar* v. *Dunbar*, 190 U. S. 340, 350. Whether the effect of paragraph *b* is to cause an unliquidated claim which is susceptible of liquidation but is not literally embraced by paragraph *a*, to be provable in bankruptcy, we are not called upon to decide, as we are clear that the debt of the plaintiff was embraced within the provision of paragraph *a*, as one "founded upon an open account, or upon a contract, express or implied," and might have been proved under section 63*a* had plaintiff chosen to waive the tort, and take his place with the other creditors of the estate. He did not elect to do this, however, but brought an action of trover, setting up a fraudulent conversion of his property by defendants. In the first five counts of his declaration he charges a fraudulent conversion of his interest in the stock, and in the last five counts that the defendants had induced him to make further payments on such stock in the way of margins, by false and fraudulent representations.

---

date, or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs taxable against an involuntary bankrupt, who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee, and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a provable debt; (4) *founded upon an open account, or upon a contract express or implied;* and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interests accrued after the filing of the petition and up to the time of the entry of such judgments.

(*b,*) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate.

The question whether the claim thus set forth is barred by
the discharge depends upon the proper construction of sec-
tion 17, which declares that the discharge in bankruptcy re-
lieves the bankrupt from all of his "provable debts" except
such as ". . . (2) are judgments in actions for frauds,
or obtaining property by false pretences, or false representa-
tions, or for wilful and malicious injuries to the property or
person of another . . . or (4) were created by his fraud,
embezzlement, misappropriation, or defalcation while acting
as an officer, or in any fiduciary capacity."

Do these words apply to all debts created by the fraud,
embezzlement, misappropriation of the bankrupt, or only to
such as were created while he was acting as an officer or in
some fiduciary capacity? The fact that the second subdi-
vision of section 17 excepted from the discharge "all *judgments*
in actions for frauds, or of obtaining property by false pre-
tences, or false representations," indicates quite clearly that
as to frauds in general it was the intention of Congress only
to except from the discharge such as had been reduced to
judgment, unless they fall within the fourth subdivision, of
those created by the fraud, embezzlement, misappropriation,
or defalcation of the bankrupt while acting as an officer or in
a fiduciary capacity. Unless these words relate back to all
the preceding words of the subdivision, namely, the frauds
and embezzlements, as well as misappropriations or defalca-
tions, it results that the exception in subdivision 2 of all
judgments for fraud is meaningless, since such judgments
would be based upon a fraud excepted from discharge by
subdivision 4, whether judgment had been obtained or not.

This conclusion is fortified by reference to corresponding
sections of the former bankrupt acts. Thus, by the first sec-
tion of the act or 1841, 5 Stat. 440, the benefits of that act were
extended to all persons owing debts "which shall not have
been created in consequence of a defalcation as a public officer;
or as executor, administrator, guardian or trustee, or while
acting in any other fiduciary capacity." It is entirely clear

that under this section a discharge was not denied to the
bankrupt by reason of debts fraudulently contracted, but only
to such as were created by his defalcation as an officer, or
while acting in a fiduciary capacity.

We may remark here in passing that ever since the case of
*Chapman* v. *Forsyth,* 2 How. 202, this court has held that a
commission merchant and factor who sells for others is not
indebted in a fiduciary capacity within the bankruptcy acts
by withholding the money received for property sold by him.
This rule was made under the bankruptcy act of 1841, and
has since been repeated many times under subsequent acts.
*Neal* v. *Clark,* 95 U. S. 704, 708; *Hennequin* v. *Clews,* 111 U. S.
676, 679; *Noble* v. *Hammond,* 129 U. S. 65, 68; *Upshur* v. *Bris-
coe,* 138 U. S. 365, 375, as well as in cases in the state courts
too numerous for citation.

Under the bankruptcy act of 1867 the list of debts excluded
from the operation of the discharge was considerably larger.
In section 33, Revised Statutes, 5117, it was declared that :

"No debt created by the fraud or embezzlement of the bank-
rupt, or by his defalcation as a public officer, or while acting
in any fiduciary character, shall be discharged by proceedings
in bankruptcy; but the debt may be proved, and the dividend
thereon shall be a payment on account of such debt."

The language of this section is so clear as to require no
construction. It is plain and explicit to the effect that the
fraud and embezzlement of the bankrupt need not have been
committed by him while acting as an officer or in a fiduciary
character, and that this character relates only to his defalca-
tion. But under the act of 1898 there is no such severance,
in the fourth paragraph as would authorize us to say that the
term "fiduciary capacity" did not extend back to the words
"fraud, embezzlement and misappropriation." It was the
opinion of the Supreme Court of Illinois that "a mere change
in phraseology, apparently for the sake of brevity, rendering
the meaning somewhat obscure, cannot be regarded as showing
a legislative intent to depart so radically from precedents es-

tablished by previous bankruptcy legislation and judicial decisions, as to provide that debts created by fraud or embezzlement of the bankrupt should be released by his discharge in bankruptcy, unless such fraud or embezzlement should be committed while the bankrupt was acting as a public officer, or in a fiduciary capacity."

Our own view, however, is that a change in phraseology creates a presumption of a change in intent, and that Congress would not have used such different language in section 17 from that used in section 33 of the act of 1867, without thereby intending a change of meaning. The view generally taken by the bankruptcy courts has been that the terms "officer" and "fiduciary capacity" extend to all the claims mentioned in paragraph 4, and are not confined to cases of defalcation. *In re Rhutassel,* 96 Fed. Rep. 597; *In re Lewensohn,* 99 Fed. Rep. 73; *In re Hirschman,* 104 Fed. Rep. 69; *In re Cole,* 106 Fed. Rep. 837; *In re Freche,* 109 Fed. Rep. 620; *Hargadine-McKittrick Dry Goods Co.* v. *Hudson,* 111 Fed. Rep. 361. This is the natural and grammatical reading of the clause.

The cases in the state courts are almost uniformly to the same effect. Thus in *Smith & Wallace Co.* v. *Lambert,* 69 N. J. Law, 487, the defendant pleaded to an action on a book account his discharge in bankruptcy, to which the plaintiff replied that the cause of action was created by the fraud of the defendant. The Supreme Court of New Jersey held the replication to be insufficient. "We think," said the court, "that under section 17 of the bankrupt law, to which reference has been made, there is no provision that would except from the discharge the debt upon which the present suit is brought."

In *Morse* v. *Kauffman,* 100 Virginia, 218, it was pleaded against the discharge that the goods were procured by false pretenses. After holding that the case had not fallen within subdivision 2 of section 17, as there was no judgment for fraud, the Supreme Court of Virginia observed:

"It would seem to be equally clear that the demand of plaintiffs in error is not within the exception of subdivision 4.

of section 17.   It is not pretended that the claim was created by the bankrupt's fraud, embezzlement, misappropriation or defalcation while acting as an officer, or in any fiduciary capacity."

"The contention that 'fraud' should be segregated from the qualifying language 'while acting as an officer or in any fiduciary capacity' is without merit.   Such interpretation would not only destroy the grammatical construction of the sentences and contravene its plain meaning, but it would likewise be inconsistent with paragraph 2 of the same section— that a creditor should have obtained judgment in an action for fraud in order to override a discharge in bankruptcy."

A like construction was given to subdivision 4 by the Supreme Court of Missouri in *Goodman* v. *Herman*, 172 Missouri, 344, by the Supreme Court of Minnesota in *Gee* v. *Gee*, 84 Minnesota 384, by that of Rhode Island in *Crosby* v. *Miller*, 25 R. I. 172, and by the Supreme Court of New York, fourth department, in *In re Bullis*, 73 N. Y. Supp. 1047.   In this case the question was discussed at considerable length, the court saying:

"If *any* debt created by fraud, embezzlement or misappropriation is to be excepted from the application of the statute, then there is no necessity for subdivision 2, making a judgment essential to prevent the granting of the discharge under the statute."

We have not overlooked the fact that the New York Supreme Court of the first department reached a different conclusion in *Frey* v. *Torrey*, 70 App. Div. 166, affirmed by the Court of Appeals in a *per curiam* opinion, 175 N. Y. 501, but so far as we know this is the only case that supports the construction given to section 17 by the Supreme Court of Illinois.

Why an ordinary claim for fraud should be released by the discharge, while a judgment for fraud is not released, is not altogether clear, although this distinction may have been created to avoid the necessity of going into conflicting evidence upon the subject of fraud; while in cases of judgments for

frauds the judgment itself would be evidence of the fraudulent character of the claim. If a creditor has a claim against a debtor for goods sold which would ordinarily be covered by a discharge in bankruptcy, he is strongly tempted to allege, and if possible to prove, that the goods were purchased under a misrepresentation of the assets of the buyer, and thus to make out a claim for fraud which would not be discharged in bankruptcy. It was probably this contingency which induced Congress to enact that an alleged fraud of this kind should be reduced to judgment before it could be set up in bar of a discharge.

The intent of Congress in changing the language of the act of 1867 seems to have been to restore the act of 1841, which, as already observed, extended the benefits of the law to every debtor who had not been guilty of defalcation as a public officer or in a fiduciary capacity, the act of 1898 adding, however, to the excepted class those against whom a judgment for fraud had been obtained.

Some stress is laid by the Supreme Court of Illinois upon the punctuation of subdivision 4, section 17, presumably upon the insertion of a comma after the word "misappropriation," thereby indicating a severance of that which precedes from that which follows. While we do not deny that punctuation may shed some light upon the construction of a statute, *Joy* v. *St. Louis*, 138 U. S. 1, 32, we do not think it is entitled to weight in this case. In the enumeration of persons or things in acts of Congress it has been the custom for many years to insert a comma before the final "and" or "or" which precedes the last thing enumerated, apparently for greater precision, but without special significance. So little is punctuation a part of statutes that courts will read them with such stops as will give effect to the whole. *Doe* v. *Martin*, 4 J. R. 65; *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77, 84; *United States* v. *Lacher*, 134 U. S. 624, 628; *United States* v. *Isham*, 17 Wall. 496.

2. But it is strenuously insisted by the plaintiff that a claim

for the conversion of personal property is not within the scope of section 17; because it is not a "provable debt" within the definition of section 63*a*. Did the latter section stand alone, there would be some ground for saying that a claim, though "founded upon an open account, or upon a contract, express or implied," would not be a provable debt, if plaintiff elected to treat the conversion as fraudulent and sue in trover, though he might have chosen to waive the tort and bring an action for a balance due on account. An early English case, *Parker* v. *Crole*, 5 Bingham, 63, is cited to the effect that the operation of the discharge is determined by the election of the creditor to sue in assumpsit or case. A like ruling was made in certain cases under the bankruptcy acts of 1841 and 1867. *Williamson* v. *Dickens*, 27 N. Car. 259; *Oliver* v. *Hughes*, 8 Pa. St. 426; *Bradner* v. *Strang*, 89 N. Y. 299, 307.

But we think that section 63*a*, defining provable debts, must be read in connection with section 17, limiting the operation of discharges, in which the provable character of claims for fraud in general is recognized, by excepting from a discharge claims for frauds which have been reduced to judgment, or which were committed by the bankrupt while acting as an officer, or in a fiduciary capacity. If no fraud could be made the basis of a provable debt, why were *certain* frauds excepted from the operation of a discharge? We are, therefore, of opinion that if a debt originates or is "founded upon an open account or upon a contract, express or implied," it is provable against the bankrupt's estate, though the creditor may elect to bring his action in trover as for a fraudulent conversion, instead of in assumpsit for a balance due upon an open account. It certainly could not have been the intention of Congress to extend the operation of the discharge under section 17 to debts that were not provable under section 63*a*. It results from the construction we have given the latter section that all debts originating upon an open account or upon a contract, express or implied, are provable, though plaintiff elect to bring his action for fraud.

In the case under consideration defendants purchased, under the instructions of the plaintiff, certain stocks and opened an account with him, charging him with commission and interest, and crediting him with amounts received as margins. Subsequently, and without the knowledge of the plaintiff, they sold these stocks, and thereby converted them to their own use. Without going into the details of the facts, it is evident that the plaintiff might have sued them in an action on contract, charging them with the money advanced and with the value of the stock; or in an action of trover based upon their conversion. For reasons above given, we do not think that his election to sue in tort deprived his debt of its provable character, and that as there is no evidence that the frauds perpetrated by the defendants were committed by them in an official or fiduciary capacity, plaintiff's claim against them was discharged by the proceedings in bankruptcy.

> *The judgment of the Supreme Court of Illinois is therefore reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.*